4-1. Grant Erickson, Attorney for the Appeal of the U.S. Supreme Court It looks like four against one. Brave man. Counsel, we're ready to hear your argument as soon as you can get yourself prepared. Good morning. Welcome to the Court. Please proceed.  The central statute in this case, the Endangered Species Act, is, of course, one that this Court has hardly ever been asked to address. There's a reason for that, isn't there? Yes, there is. We don't have jurisdiction. In this case, you do, Your Honor. Well, tell us a little bit about the Cognate case before the Ninth Circuit. I'm sorry, Your Honor? There's another case that's now up before the Ninth Circuit that came out of a district judge in the same district who you represent. And everyone's the same people. Now you're up before the Ninth Circuit, and it presents, under a slightly different statutory framework, roughly the same question. Yet all of you just assume we have jurisdiction here. Your Honor, the issue of jurisdiction was presented to the Western District, and the reason the Western District sent it to the Court of International Trade is because the issue of this case involves an effort to enforce an embargo. Your best argument is under Section 9, correct? It's the obligation of the Customs Service under Section 7, as it relates to Section 9. Well, but where does the jurisdiction of the Court of International Trade come into play? Under Section 9, correct? The Court of International Trade has jurisdiction over any effort to enforce embargoes in the United States. So how the ESA relates to that? Section 7 is Customs Obligations, defines the outlines of Customs Obligations to implement Section 9. Am I not correct that the Court of International Trade ruled that it did not have jurisdiction under Section 9, and then went ahead under Section 7 anyway? The issue that the Court of International Trade addressed was whether or not Customs itself was violating Section 9. Correct. This non-action as action. But if I've missed something, you tell me. Because it looks to me like the decision of the Court of International Trade just went quickly over the Section 9 issue, said no jurisdiction there, grappled with the Section 7 issue. If it does not have jurisdiction to begin with under Section 9, it can't exercise any supplemental jurisdiction. It is not supplemental jurisdiction because Section 7 defines the scope of Customs Obligations as it relates to imports. In essence, Section 7 is the direction to Customs as to how it implements its obligations. And the specific obligation we're dealing with here is imports. I don't mean to belabor this, but would you sketch for us briefly what I've called the case now before that Court? The Ninth Circuit case that actually was just set for argument relates to a biological opinion that was done on the State Department's approval of agreement to enter into the Pacific Salmon Treaty. And it relates to the State Department's role, not only in approval of the treaty, but also its ongoing role in review of U.S. fisheries that affect the same fish. The issue for the Ninth Circuit is whether it was dismissed by the Western District in part due to redressability issues. The fishery occurs in Canada. Can the Western District do anything it can't tell the Executive Branch to negotiate with Canada? The answer to that, the reason why the Western District has jurisdiction in that case, is because the same fish are caught in U.S. fisheries, the same agencies oversee those U.S. fisheries, the same biological opinion and same assessment of the impact on the fish applies to U.S. fisheries and to Canadian fisheries. To say that a Canadian fishery has no impact would leave them of obligation to do anything about the U.S. fisheries that affect the same fish. But that was a positive action by the State Department, though, in entering into the treaty. Yes. So that was not the... And an ongoing action because they review the U.S. fisheries on a regular basis. But you don't have that same case here, though. Actually, we do because... Where is there any positive action that would come in under Section 7? The positive action is a U.S. fisherman, a resident of Seattle, goes on vacation to Vancouver Island, goes in a commercial, stays at a fishing lodge, goes off 20 miles offshore into waters that have about 90% of the fish returning to the United States, catches fish, returns to the Canadian lodge, the fish are cleaned, put in a box, they come back to the U.S., they present themselves to a customs official with their passport, their luggage, please let me return to the United States. Customs official then makes a decision. Do I let this person into the United States or not? I look at their baggage or I don't. They exercise judgment. They look at the fish box. They do not today can give any consideration to whether or not those fish are something that can be imported into the United States. That is the point at which customs is making an action. Multiply that thousands of times. That's the course of action that customs is engaged in. There's a specific interaction between a customs official and someone coming into the United States with fish that are prohibited by U.S. law to be imported into the United States. That is the import action, which gives the Court of International Trade jurisdiction. And Section 7, it gives under Section 28 U.S.C. 1581 I.3, which sets out the jurisdiction of the Court of International Trade. It gives it jurisdiction over matters that arise out of any law of the United States providing for three, embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of public health or safety. Now, am I incorrect that the Court of International Trade did not think that Section 9 fit within that? I do not believe the Court of International Trade addressed that question. Correct. It jumped over that question. And now I invite you to address it. It does fit within that provision. We argued to the Western District that it did not, but we accepted their decision that it did because of the way in which they interpreted embargo, which is any effort to restrict imports. It wasn't a complete barrier or a blocking sum. Any portion of the restriction on imports fell within that provision. Well, I guess I'm arguing, or not arguing, I'm suggesting that maybe you got it right the first time. The Endangered Species Act, jurisdiction over the Endangered Species Act, is in the district courts of the United States, not in the Court of International Trade. Do you agree with that? The original jurisdiction under the Endangered Species Act does lie with the district courts. And if that's true, it follows that it must go to one of the numbered circuits of the D.C. But there are several cases in which, a handful, I should say, of cases in which applicability of the Endangered Species Act provisions to imports have been presented through the Court of International Trade and ultimately to this court. There were two sets of cases basically involving dolphins, dolphin safe fishing, and sea turtles, turtle excluder devices. Both involved international agreements and efforts to enforce restrictions on fisheries in other countries in order to implement the purposes of the ESA. And both those sets of cases, and the Ninth Circuit specifically addressed this issue, which is why the Western District sent this case to the Court of International Trade. We were presented with a case where the specific issue of whether or not the district court and the Ninth Circuit could consider a trade restriction related to endangered fish could be considered in those courts. They determined they could not, and it was sent to the Court of International Trade. Are you talking about our case here? No. Or are you talking about some other case? And what does the citation do? Your Honor, I don't have it on the tip of my tongue. I'll have it for you. Thank you. Counsel, I don't understand you to have answered the question. I think Judge Garza asked it about three times. Where is the affirmative agency action here? The seminal case is TVA v. Hill in the Endangered Species Act case law. And there the Supreme Court said that they could not imagine a way that you could close the doors of the teleco dam without a federal action. Here, you have someone presenting themselves at a border entry. They ask customs to let them into the United States. I don't think you can imagine a way in which that person comes into the United States legally without an action by customs allowing them to. I thought the action you complained of was the failure to inspect the box of fish to discover that there is an endangered species inside the box. That's what they didn't do, not what they did do. So how is that an action? The non-search is an action, according to you. But they are allowing the fish into the United States. It is presented to them. The reason that the issue of the fact that they're not looking in the box is important is because they have the discretion to do so. What the Supreme Court just clearly clarified is that whenever there is a discretionary action by a federal agency that has the potential to affect a listed species, then consultation obligations of Section 7 apply. They have to at least determine whether or not consultation is required. And the substantive obligation to act in a way that does not jeopardize the fish rests with customs, because it is in that position of screening the border and allowing people into this country. That interaction that occurs between someone who comes to the border and the customs agency. But you're not saying that that's discretionary on the customs part. That's mandatory, isn't it? It's mandatory that someone present themselves. It is discretionary as to whether or not they allow them to bring the fish into the United States. No, it's discretionary as to whether they're going to inspect the icebox to see what fish is in there. And the limit on that discretion, and this goes to Heckler v. Chain, the limit on that discretion is Section 7, which says you have discretion as an agency, but you cannot exercise that discretion in such a way that it jeopardizes the listed animal. And Section 7 does not allow customs to make that decision on its own. It has a process which requires them to consult with the agency with jurisdiction, National Marine Fisheries Service, to determine whether or not the actions that they're engaged in have an effect on the species. And that's what we're asking for here. That consultation would produce the result, a biological opinion or some administrative record. The consultation really doesn't matter. The concern being expressed, I think, by all three of us is that the Court of International Trade had no business in this case, period, full stop. So what the result would be if they did have jurisdiction is not what we're concerned about. I guess the question would be, then, what court would have jurisdiction to consider whether or not imports into the United States are allowed or not? And that is the job of the Court of International Trade, as I understand it, and as the Ninth Circuit has interpreted the scope of its jurisdiction, and as I understand the Court of International Trade has interpreted its jurisdiction. Well, maybe no court has jurisdiction because the agency didn't take an action. Well, the agency does take an action each time someone presents themselves to the border with a box of fish. Try to imagine what it is. Customs isn't sitting off in their guard booth as people roll through the border. The people at Customs are interacting with individuals every day. When I cross the border to go to Canada and return, I have to present my ID and I get questioned. We all understand that. But that is an action that has an effect on the fish because they are allowing the fish into the United States. Well, respectfully, we're not bound by the Ninth Circuit and what it has decided. May I reserve the remainder of my time for rebuttal? Yes, we'll give you back a little bit of rebuttal time as well. All right, Mr. Tessini. Maybe you might help your brother out here. Why do you want to be here? Well, Your Honor, under 28 U.S.C. Section 1581 I.3, which is the Court of International Trade's jurisdictional statute, that court possesses jurisdiction over any law of the United States providing for embargoes or other quantitative restrictions. Section 9 of the Endangered Species Act contains a blanket prohibition upon imports. And it says that matters arising under that statute shall be heard in the district courts of the United States. That's correct. And this statutory inconsistency was created by the fact that the Endangered Species Act was enacted in the 1970s and it was not until the 1980s when the Court of International Trade was created. And so there was no means for—and Congress has not updated the statute. However, this newer statute that's very specific with respect to jurisdiction for embargoes would generally take precedence over the more general statute that provided the district courts with jurisdiction in this narrow subset of Endangered Species Act cases. And then under Section 7, you could be arguing that it's the administration in enforcement of an embargo. The trial court in the state of Washington, we believe, asserted that the Court of International Trade would have supplemental jurisdiction. We respectfully disagree with that view. However, the court would have jurisdiction, the Court of International Trade, under Section 1581 I.4, for the Section 7 claim, which addresses administration and enforcement of an embargo, of an I.3 claim. Isn't it really a question of the CIT having jurisdiction? They do have some jurisdiction over these types of claims, but the cause of action was not established. That's correct. And in this case, the Court of International Trade got it very correctly. The only question in this case is whether unexercised discretion, which is what plaintiffs are alleging here, is, quote, an action authorized, funded, or carried out by an agency under Section 782 of the Endangered Species Act. That's the only question here. The regulation that defines action, 50 CFR 402.2, which we cited in our brief at page 25, is very clear that actions are affirmative actions by the agency, not anything that can be plucked out of the infinite number of things that an agency does not do that are within the agency's discretion. What type of affirmative action would customs need to undertake in order to be covered? Customs could build a border crossing that might affect habitat or conduct some other sort of activity on the land that might alter the habitat of an endangered species or cause a take or somehow jeopardize the continued existence of the species. Not in carrying out their function as a border patrol? That's a law enforcement action, and the question whether a law enforcement agency is diligently enough enforcing the law is not an agency action as envisioned by the statute. In fact, another plaintiff could allege that customs took some agents from the airport and brought them up to the border to check coolers and cars coming across the border and now tiger parts are being smuggled in through the airport at a higher rate. And in fact, this is an inherently discretionary law enforcement function by the agency that is not subject to the consultation requirement when all that's being alleged is inaction. But if in fact they decided they passed a regulation that from this day forward we're going to check every cooler that comes in through the Seattle airport. Then that regulation itself is an agency action under the regulation defining action. So that would be the affirmative action on their part, and it would be subject to consultation. Yes, and granting a permit to import endangered species, something along those lines, yes. And those are the kinds of things that are specifically identified in the regulation. Those are affirmative agency actions. In this case, plaintiffs are attempting to turn the whole action versus inaction question on its head and maintain that alleged inaction is really an action. But the case law out there simply does not support that view. Cases we cited in our brief, California sport fishing versus FERC in the Ninth Circuit, it was very helpful in this case. FERC had granted a 30-year permit to operate a dam. And at about year 20 of that permit, new species were listed under the Endangered Species Act. And plaintiffs attempted in that case to compel FERC to renegotiate the permit as it was within FERC's discretion. And the court held that Section 7 consultations were not required upon whether FERC would renegotiate the license for the dam because Section 7 did not apply to, quote, agency discretion to decide whether to exercise discretion. What about the Pacific Rivers Council case that has been cited by the plaintiffs? That's probably an anomaly type of a situation, but it's there. The Ninth Circuit case. Right, and the Ninth Circuit case in Pacific Rivers supports the government's view. In fact, Judge Barzilay at the Court of International Trade relied heavily upon that case, which also involved allegations that government agencies did not use their regulatory power, did not consult upon how to use their regulatory powers in a discretionary manner. And that's all that the Western Watersheds case held. But the court found, though, that the agency action was ongoing, so too was the duty to consult. Oh, the ongoing agency action in Pacific Rivers, that involved LRMPs, land resource management plans, and held that there was an ongoing agency action for Section 7a purposes. Exactly. Although we're not discussing LRMPs, which are specific plans that are created under specific statutory grants of authority and regulatory grants of authority, there's a conflict among the circuits on that issue. In the Tenth Circuit, the Forest Grant case made clear that contrary to Pacific Rivers, our analysis makes painfully apparent that, quote, standards, guidelines, policies, criteria, land designations, and the like appearing within an LRMP do not constitute action requiring consultation. And, in fact, plaintiffs aren't even alleging a policy. They, in their brief, state through conscious action or through neglect. They don't even allege as much as the Pacific Rivers plaintiffs do. But is inaction sufficient, though, if they have a duty to do it and they don't do it? Well, if that were the case, yes, the plaintiffs would have to meet the standard for a writ of mandamus, and the Supreme Court decision in Southern Utah Wilderness Alliance was very clear about exactly what the standard is for compelling agency action. And there needs to be a clear statutory mandate that customs or an agency actually undertake some specific action. It's simply not enough to come into court and say, the agency has discretion to take action X. We think it would be good if the agency took action X. Therefore, compel the agency to take action X or to consult upon taking action X. And I should know this. When was the Court of International Trade disenabling statute? When was that passed? The one that you say is the more specific statute. It was 1981 was when the Court of International Trade was created. And the Endangered Species Act was 1973. All right. And all these years, no one has suggested that the Court of International Trade has jurisdiction over these matters. The jurisprudence that you are conjuring with here, effectively, I might say, is all Ninth Circuit jurisprudence, although we have an outlier, you say, in the Tenth Circuit. And now, suddenly, your position has at least been consistent. You would just as soon be out from under the Ninth Circuit, where these things seem to be adjudicated, and translate the favorable parts of that jurisprudence to this Court. Doesn't it trouble you that the statute, since the early 1980s, has not been used for these 30 years? Well, we respectfully disagree. It was used in the 90s in the various turtle cases. Likewise, it was also used in the early part of the 2000s in the Defenders of Wildlife case, which was the tuna dolphin case. One of the dolphin cases, also. Yes. And actually, the very similar thing occurred in that case. The jurisdiction, the Ninth Circuit, took some of the issues, and the Court of International Trade in this court took other aspects. And it is beneficial to have a single national forum, especially with respect to imports of endangered species, because if an importer can't go into Seattle and bring their wares in, maybe they can bring it into the Fifth Circuit, or into the Fourth Circuit, into Wilmington, North Carolina, or into the First Circuit, into Boston. Is your position that the court did have jurisdiction, but the plaintiff did not have a claim? Our position was that the court had subject matter jurisdiction over the general issue, but the plaintiffs lacked standing because of redressability. Likewise, we also argue that the plaintiffs did not have a claim because under Section 7, you cannot compel consultations upon unexercised discretion, which is what this case is. Well, I'm not sure I still understand you. You seem to be saying general subject matter jurisdiction, but not jurisdiction over this complaint by this party. If there were an agency action where there could be a challenge, then the trial court, the Court of International Trade, would have jurisdiction. But we don't have agency action here. That's true. So the court lacked jurisdiction to entertain this particular claim. And as well, the plaintiffs lacked the cause of action. That's correct. So you're arguing both? We are arguing both. You're saying that there was no jurisdiction in the CIT? That's correct. We raised standing arguments, and we also, under Heckler v. Chaney, the court dismissed the case on jurisdictional grounds when there was no cause of action to compel specific agency action. But that's just a failure of standing, not jurisdiction, not subject matter jurisdiction. Subject matter jurisdiction still resides in CIT. Subject matter jurisdiction for a well-founded claim for which all other jurisdictional prerequisites have been met. Under Section 1581I.3, and possibly for administration and enforcement of that matter under 1581I.4. For these reasons, we respectfully request that the court affirm the judgment below. Thank you. Thank you. You have five minutes for rebuttal. Thank you, Your Honor. I'd start first by giving a couple of citations to cases where the Court of International Trade addressed the prior cases that were mentioned. Earth Island Institute v. Christopher, which was 948 F. Supp. 1062 in 1996 in the Court of International Trade. Well, why do we care about that? We're not bound by decisions of the Court of International Trade unless they've been affirmed here. And the issues came up in Earth Island Institute v. Albright, 147 F. 3rd. 1352 in 1998 in the Federal Circuit. There also was, you know, the issues also came again in Turtle Island Restoration Network v. Evans, 284 F. 3rd. 1282 in this court in 2002. Neither of those cases addressed specifically the scope of the court's jurisdiction over embargoes. It was understood that the issue in those cases was efforts to block imports from other countries. And also that that's what my clients are trying to accomplish. And that's what district court looked at what we're trying to accomplish and concluded that's why it belonged to the Court of International Trade. We're trying to discourage the practice of endangered fish, threatened fish, being caught in Canadian waters in fisheries that are really targeted at U.S. origin fish and brought into the United States. It's a very common practice. And nothing, this is not a situation where they're doing some enforcement. If you look at the record, if you look at the letter that we received back to our notice letter from Customs, it's pretty clear that nothing is being done in this area. Now, we did not... Well, what does that have to do with whether there's jurisdiction or a live cause of action in the case that we're reviewing? The issue of jurisdiction in this case, the Court of International Trade believed that ultimately the issue turned on whether or not there was agency action. And if you look at Section 7, whether or not we can bring a case under Section 7. In essence, what we said is there's a substantive obligation under Section 7 of Customs. There's a procedural obligation, which is because Customs is not allowed under the law to make the decision itself, it has to consult. So there's a procedural obligation that's black and white. That's something that the Court can look at. The Court of International Trade was very concerned about whether or not the law gave the Court some standards to apply to this review of enforcement action by the agency. Whether or not Heckler v. Cheney would block the Court's consideration of these issues. Section 7 provides that guidance to the Court. It provides the ability of the Court to review Customs action by requiring a consultation. And the product of the consultation is something that the Court's going to review. It's something Courts do all the time. The Court does not have to inject itself into determining how many people are going to be at the airport versus the border crossing in Blaine in Seattle. That's not the issue. The issue is there's a procedural obligation on the agency, on the action agency or Customs, which, when fulfilled, provides both the agencies and the Courts the information needed to determine whether or not the ESA is being satisfied. I'm really confused about why you're where you are. You started out in the district court. You presumably thought at that point that that was the correct court to be in. We sought exactly the same relief. Unfortunately, for you at least, the district judge in Washington thought he didn't have jurisdiction, so he transferred the case. But your view, at least initially, was the right place for your lawsuit is in a district court. Given that, I'm sort of curious why you didn't try to get the case transferred back to the district court when Judge Zilley sent it to New York. We accepted the premise because, ultimately, what we are trying to accomplish is to restrict imports. We understand what you're trying to do, but the question is where's the right place to try to do it? Judge Zilley's conclusion was, in looking at the statute and looking at the case law presented by the government, that the question of restricting imports is properly considered by the Court of International Trade. We understand that. That doesn't mean it's right. That's just what he concluded. Ultimately, we accepted that conclusion because, ultimately, that's what we were trying to do. But taking all the factual allegations here in your way, taking them all, it does seem that you're sort of bootstrapping the language, going back to the organic statute here, and saying that that constitutes a law of the United States providing for embargoes or other quantitative restrictions on the importation, even if we take these fish as merchandise. But I understand what he does. Section 9, first prohibition in Section 9, do not import endangered species. The National Reef Fishery Service extended that to threatened salmon. The reason that that exists is because a determination was made by Congress that restricting commerce in endangered and threatened species is the best way to protect these animals. This is a restriction on commerce in international trade, and that's why it was in the Court of International Trade. Thank you. All right. We think that both counsel will take the appeal under advisement. Mr. Williams. Thank you. All rise. Thank you.